GEORGE G. MGDESYAN, ESQ. (STATE BAR NO. 225476)
ARAKSYA BOYADZHYAN, ESQ. (STATE BAR NO. 299917)
CHRISTINA AZOIAN, ESQ. (STATE BAR NO. 333973)
MGDESYAN LAW FIRM
4529 SHERMAN OAKS AVENUE
SHERMAN OAKS, CA 91403
TELEPHONE: (818) 386-6777
FACSIMILE: (424) 232-8599

Attorney for Plaintiff,
ROBERT MALEKYAN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| ROBERT MALEKYAN, an individual,<br><br>Plaintiff,<br><br>V.<br><br>STATE FARM GENERAL INSURANCE COMPANY, and DOES 1 - 100, Inclusive,<br>Defendants. | Case Number: 2:25-cv-01642<br>[Los Angeles County Superior Court Case No.: 24NNCV06873]<br><br>Complaint Filed: December 30, 2024<br>Assigned to District Judge Dale S. Fischer; Magistrate Judge Jean P. Rosenbluth<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES:**<br>**1. BREACH OF INSURANCE CONTRACT**<br>**2. BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**3. DECLARATORY RELIEF**<br><br>**[JURY TRIAL DEMAND]** |

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) as this Court has original jurisdiction based on diversity of citizenship and is one which was removed to this Court by Defendant pursuant to 28 U.S.C. § 1441(a) and (b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below. 28 U.S.C. §§ 1332(a), 1441(a) and (b), and 1446.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(1), 1391(b)(2), and 1446(a).

## PARTIES

3. At all relevant times to the facts underlying the present first amended complaint, Plaintiff ROBERT MALEKYAN (hereinafter "Plaintiff") is and was a resident of Los Angeles, California, at the time of the allegations set forth herein.

4. Defendant STATE FARM GENERAL INSURANCE COMPANY ("STATE FARM" or "DEFENDANT") is now and, at all times mentioned herein has been, a corporation, or business entity licensed to do and doing business as an insurance company in all of the Counties of the State of California and transacting business in the State of California including the providing and marketing its insurance within the State of California County of Los Angeles. STATE FARM has continuously and systematically conducted business on a regular basis in the State of California and has purposefully availed itself of the privileges and benefits of conducting business in California.

5. PLAINTIFF is ignorant of the true names, capacities, whether individual, corporate, associate, governmental or otherwise, of DEFENDANTS sued herein as DOES 1 through 100, inclusive, and therefore sues said DEFENDANTS by fictitious names. PLAINTIFF will amend this Complaint to allege their true names and capacities when ascertained. PLAINTIFF is informed

and believes and thereupon alleges that each of the fictitiously named DEFENDANTS acted or failed to act, conspired with, participated with, aided or abetted, or ratified the acts and omissions of other DEFENDANTS as alleged herein. PLAINTIFF is further informed and believes and thereon alleges that each of the DOE DEFENDANTS is responsible in some manner for the acts, occurrences, damages and liability alleged herein.

6. PLAINTIFF is informed and believes and thereon alleges that at all times herein mentioned, each of the DEFENDANTS was the servant, agent, employee, partner, co-venturer, conspirator, with some or all of the remaining DEFENDANTS and their acts or omissions to act as alleged herein were within the course and scope of their relationships

## **FACTS COMMON TO ALL CAUSES OF ACTION**

7. Plaintiff ROBERT MALEKYAN was and is the owner of the subject property, 2620 N. Myers Street, Burbank, California 91504 (hereinafter "SUBJECT PROPERTY").

8. PLAINTIFF ROBERT MALEKYAN retained an active HW-2105 homeowners insurance policy from STATE FARM (hereinafter "POLICY") with Policy Number 71-J6-H324-8 at the time the water damage occurred at the SUBJECT PROPERTY. The written policy was signed and executed in the State of California.

9. Under the POLICY, PLAINTIFF agreed to pay insurance premiums to STATE FARM in exchange for STATE FARM's promise to cover PLAINTIFF for losses, including, but not limited to, losses resulting from water damage, in accordance with the terms set forth in the POLICY. Since the inception of POLICY, PLAINTIFF has paid all premiums, and the POLICY has remained in full force and effect at all relevant times.

10. In exchange for receiving PLAINTIFF's premium payments, which PLAINTIFF dutifully and regularly paid, STATE FARM was obligated to cover losses to the SUBJECT PROPERTY under POLICY. However, STATE FARM wrongfully and in bad faith delayed PLAINTIFF's insurance claim by denying coverage for the water damage, despite clear evidence of substantial property damage warranting coverage under the POLICY.

11. The POLICY insured PLAINTIFF, *inter alia*, for all risks of direct physical loss except those risks the POLICY excluded at the SUBJECT PROPERTY. Specifically, the POLICY afforded coverage for all risk of accidental direct physical loss to property described in Coverage A, except for losses excluded or limited in SECTION I-- LOSSES NOT INSURED. The sudden and catastrophic water intrusion and resulting water damage are risks accidental of direct physical loss, and no exclusions in the POLICY apply to the loss.

12. On January 01, 2024, PLAINTIFF'S SUBJECT PROPERTY experienced a sudden and identifiable incident of water intrusion, which was a single, immediate event, that resulted in significant damage (hereinafter "INCIDENT").

13. PLAINTIFF, following the policies and procedures of Defendant STATE FARM, immediately reported the water damage to STATE FARM on or about January 08, 2024. STATE FARM assigned claim number 75-61M0-64H (hereinafter "CLAIM").

14. Plaintiffs satisfied all conditions and obligations required under the POLICY to obtain reimbursement for their loss, including prompt notification and presentation of a timely claim to Defendants. Specifically, Plaintiffs hired a public adjuster to adjust and present the loss. Plaintiffs also diligently procured and timely provided STATE FARM the documents and information, STATE FARM needed to investigate and adjust the claim.

15. Prestige Public Adjusters performed an on-site inspection and estimate with photographs, which was provided to STATE FARM on or about March 06, 2024. The restoration, service, and remodel estimate were approximately $147,687.01.

16. PLAINTIFF complied with STATE FARM and provided abundant evidence demonstrating the INCIDENT was *not* a result of continuous and repeated seepage of water and should therefore be covered under the POLICY.

17. PLAINTIFF provided video footage showing the sudden and identifiable incident of water intrusion and water damage on January 01, 2024, the on-site inspections, pre and post photographs from the mitigation provider, photographs provided by Public Adjuster's Contractor, plumber's report, discussion with the plumber and review of the water bills, amongst other things.

18. Therefore, the water damages at the SUBJECT PROPERTY were entitled to coverage under the POLICY given that there was evidence that the INCIDENT was an immediate event, unrelated to any prior condition or progressive damage associated with seepage or leakage overtime.

19. Furthermore, STATE FARM was to provide coverage under the POLICY given PLAINTIFF'S prompt action to notify and mitigate any and all damages caused by the water damage.

20. On March 07, 2024, STATE FARM wrongfully denied PLAINTIFF's CLAIM and refused to pay the full amount owed under the POLICY, claiming that their "investigation and evaluation of your loss has determined that your damage to your home is not covered by your policy."

21. Thereafter, STATE FARM provided PLAINTIFF with a follow-up letter to summarize STATE FARM'S denial position on May 14, 2024.

22. STATE FARM wrongfully evaluated and denied the CLAIM claiming it was consistent with "seepage or leakage of water that occurs or

develops over a period of time." STATE FARM'S letter further outlined the following language from the POLICY:

"Your policy HW-2105 specifically excludes coverage for these damages and states in part:

**SECTION I - LOSSES INSURED**

**COVERAGE A - DWELLING**

***We*. will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I - LOSSES NOT INSURED or otherwise excluded or limited in this policy. However, loss does not include and we will not pay for, any *diminution in value*.**

**SECTION 1- LOSSES NOT INSURED**

**1. *We* will not pay for any loss to the property described in Coverage A that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually. Involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:**

**f. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;**

**g. corrosion, electrolysis, or rust;**

**h. wet or dry rot;**

**j. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, to ceilings;**

**However, *we* will pay for any resulting loss from items a. through k. unless the resulting loss is itself a loss Not Insured as described in this Section.**

**3. *We* will not pay for, under any part of this policy, any loss that is caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from natural or external forces, or occurs as a result of any combination of these:**

**c. Water, meaning:**

**(1) flood;**

**(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose,**

**or hydrant;**

**(3) waves (including tidal wave, tsunami, and seiche);**

**(4) tides or tidal water;**

**(5) overflow of any body of water (including any release, escape, or rising of any body of water. or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);**

**(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;**

**(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;**

**(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure;**

**(9) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:**

**(a) and is:**

**(i) continuous;**

**(ii) repeating:**

**(iii) gradual;**

**(iv) intermittent;**

**(v) slow; or**

**(vi) trickling; and**

**(b) from a:**

**(i) heating. air conditioning, or automatic fire protective sprinkler system;**

**(ii) household appliance; or**

**(iii) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.**

***We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time; or**

**However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured***

**f. *Fungus*, including:**

**(1) any loss of use or delay in rebuilding, repairing, or replacing**

**covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair, or replacement of that property, by *fungus*;**

**(2) any remediation of *fungus*, including the cost or expense to:**

**(a) remove or clean the fungus from covered property or to repair. restore, or replace that property;**

**(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*;**

**(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the *fungus*; or**

**(d) remove any property to protect it from presence of or exposure to fungus; or**

**(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.**

**However, *we* will pay for loss as specified under SECTION I - PROPERTY SUBJECT TO LIMITATIONS.**

**4. *We* will not pay for any loss described in paragraphs 1., 2., and 3. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:**

**a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;**

**b. defect, weakness, inadequacy, fault, or unsoundness in:**

**(1) planning, zoning, development, surveying, or siting;**

**(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;**

**(3) materials used in repair, construction, renovation, remodeling, grading, or compaction;**

**or**

**(4) maintenance;**

**of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or**

**c. weather conditions.**

**However, *we* will pay for any resulting loss from items 4.a., 4.b., and 4.c. unless the resulting**

**loss is itself a Loss Not Insured as described in this Section.**

**5. *We* will not pay for, under any part of this policy, any loss consisting of the items in paragraphs 1., 2., 3., or 4. above. This exclusion does not apply if the loss is caused by a peril that is not otherwise excluded."**

23. STATE FARM wrongfully evaluated and denied coverage of the CLAIM notwithstanding the plain language of the POLICY, which provides coverage for such losses, and they did so wrongfully and in bad faith in violation of California law.

24. This First Amended Complaint details direct violations of California laws intended to protect insurance policyholders who act in good faith with their carriers.

25. PLAINTIFF devoted substantial attention and effort to secure an insurance policy with STATE FARM.

26. PLAINTIFF has honored that relationship with his continued patronage and loyalty to STATE FARM by making the premium payments on time.

27. PLAINTIFF precisely took out this POLICY with STATE FARM to cover this kind of loss.

28. On information and belief, STATE FARM deferred PLAINTIFF'S claim in bad faith as part of a policy to limit its losses, notwithstanding that the POLICY provides coverage from PLAINTIFF'S losses.

29. At said time, Plaintiff's STATE FARM policy was in full force and effect. Despite that, and its obligations under the POLICY, STATE FARM refused to pay for PLAINTIFF'S CLAIM.

30. To date, Defendants, and each of them, have failed to properly provide payments for PLAINTIFF ROBERT MALEKYAN'S home water damage CLAIM under POLICY.

31. PLAINTIFF sues pursuant to the terms, conditions, and covenants contained in the STATE FARM POLICY, policy number 71-J6-H324-8, a contract of insurance, issued by STATE FARM to PLAINTIFF

## FIRST CAUSE OF ACTION

**For Breach of Insurance Contract**

**(Against All Defendants)**

32. PLAINTIFF hereby incorporates as though fully set forth herein all the allegations set forth in the preceding paragraphs.

33. The POLICY is an insurance contract and an agreement entered between STATE FARM and Plaintiff. STATE FARM constructed the language in the POLICY and both parties mutually agreed to it.

34. At all times relevant, PLAINTIFF has paid all premiums and fulfilled or performed all their obligations under the POLICY.

35. STATE FARM had contractual duties to provide PLAINTIFF with insurance coverage under the applicable POLICY.

36. In wrongfully evaluating and denying coverage of PLAINTIFF's insurance claim, and otherwise refusing to perform under the POLICY, STATE FARM breached those duties.

37. As a result of the said breach, PLAINTIFF has been damaged in the amount of coverage to which they are entitled under the POLICY and PLAINTIFF seeks compensatory, general, and other monetary damages in an amount to be determined at trial, plus interest.

38. As a further proximate result of the DEFENDANTS' bad faith conduct, PLAINTIFF was compelled to retain legal counsel to obtain the coverage benefits due under the POLICY. Therefore, DEFENDANTS are liable to the PLAINTIFF for attorney fees, witness fees, and costs of litigation reasonably necessary and incurred by the PLAINTIFF to obtain the benefits of the POLICY.

39. DEFENDANTS carried out their bad faith conduct with a willful and conscious disregard of PLAINTIFF's rights or subjected PLAINTIFF to cruel and unjust hardship in conscious disregard of its rights. Alternatively, DEFENDANTS' conduct constituted an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention of depriving PLAINTIFF of property or legal rights, or of causing Plaintiffs other injury. DEFENDANTS' conduct constitutes malice, oppression, or fraud entitling PLAINTIFF to punitive damages in an amount appropriate to punish or set an example of DEFENDANTS and to deter future similar conduct.

40. To date, Defendants, and each of them, have failed to properly provide payments for PLAINTIFF ROBERT MALEKYAN'S water damage claim under the POLICY.

41. On July 20, 2024, PLAINTIFF'S prior attorney's office, SP LAW GROUP, mailed via U.S. Mail correspondences demanding arbitration to STATE FARM. The correspondence read in part, "Pursuant to California Insurance Code Sections 11580.2 et seq., and *Allstate Ins. Co. v. Gonzalez* (1995) 38 Cal.App. 4th 783" Claimant Mr. Robert Malekyan Demands Arbitration under the provision of Mr. Malekyan's Home Insurance Policy and attached a declaration from PLAINTIFF.

42. DEFENDANTS, including STATE FARM, and Does 1 through 100, inclusive, have breached their duties and obligations under the POLICY by denying coverage under PLANTIFF'S claim, refusing to pay for the water damage CLAIM, and finally, refusing to attend arbitration on the claim.

43. DEFENDANTS, including STATE FARM, and Does 1 through 100, inclusive, and each of them, breached the terms of the POLICY in at least the following respects:

a. By failing and/or refusing to timely pay for the loss due to them under the policy;

b. By unreasonably and without proper cause withholding payment under the policy;

c. By failing to conduct a proper, prompt, and thorough investigation;

d. By failing to evaluate Plaintiffs' claim objectively;

e. By refusing to pay for PLAINTIFF'S water intrusion/ damage claim due under the policy;

f. By denying the demand for arbitration.

g. By other acts and omission which constitute breaches of the contract of insurance which will be revealed through discovery in the herein action;

h. Unreasonably and in bad faith using unduly restrictive interpretations of the subject POLICY, specifically the interpretation of the Section I-LOSSES NOT INSURED, among others;

i. Unlawfully denying coverage for an otherwise covered accidental direct physical loss to property claim, in which no exclusions apply;

j. Using improper standards to adjust Plaintiffs' claims;

k. Utilizing deceptive practices to deny coverage and avoid payment of Plaintiffs' claim, including the fabrication of coverage exclusions based upon erroneous facts or without any evidence at all;

l. Misrepresenting to Plaintiffs pertinent facts or insurance policy provisions;

m. Not attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiffs' claims;

n. Compelling Plaintiffs to institute litigation to recover amounts due under the POLICY; and

o. Negligently, recklessly, and tortiously training, referring, supervising and retaining its claims adjusters and the experts STATE FARM retained for the sole benefit of STATE FARM, which STATE FARM had a duty to conduct in such a manner so as to not cause harm to Plaintiffs.

44. As a direct and proximate result of the acts and omissions of DEFENDANTS, including STATE FARM, and Does 1 through 100, inclusive, PLAINTIFF has suffered, and continues to suffer, damages.

45. By reason of the foregoing, PLAINTIFF is entitled to judgment against DEFENDANTS, including STATE FARM, and Does 1 through 100, inclusive, for general, special, actual, consequential and compensatory damages as proven at time of trial. PLAINTIFF is entitled to judgment against DEFENDANTS, including STATE FARM, and Does 1 through 100, inclusive, for breach of contract as permitted by law; including the benefits due under the policy, interest on the payment due under the policy, and fees and costs of litigation as permitted by law.

## SECOND CAUSE OF ACTION

**For Bad Faith Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against All Defendants)**

46. PLAINTIFF hereby incorporates as though fully set forth herein all the allegations set forth in the preceding paragraphs.

47. Defendants, STATE FARM and all DOES, and each of them, owed to PLAINTIFF a duty of good faith and fair dealing with respect to all transactions and relationships arising under the above-described policy of insurance.

48. Every contract, including insurance contracts, includes an implied-by-law provision to do everything incumbent upon that party to accomplish the purposes of the contract and a duty to not do anything that interferes with the right

of the other party to receive the fruits of the contract. (*Corson v. Brown Motel Investments, Inc.* (1978) 87 Cal.App.3d 422, 427; *Wilson v. 21st Century Insurance Co.* (2007) 42 Cal.4th 713, 720). This implied-by-law provision is as much a part of the contract as that which is explicitly written in the contract (*Southern Pacific Milling Co. v. Billiwhack Stock Farm* (1942) 50 Cal.App.2d 79, 83).

49. Defendant, STATE FARM, owed duties and obligations to PLAINTIFF under the subject POLICY of insurance, including the duty to do no harm to PLAINTIFF. Implied in the POLICY was a covenant by Defendant, STATE FARM, that it would act in good faith and deal fairly with PLAINTIFF, as Insureds, and would do nothing to interfere with the rights of PLAINTIFF, as Insureds, to receive the benefits of the agreements contained in the subject POLICY.

50. Not only did the conduct described in the foregoing paragraphs breach the express contracts reached between STATE FARM and PLAINTIFF as set forth in those paragraphs, but STATE FARM breached the implied-by-law provision to do everything incumbent upon it to accomplish the purposes of the contract and the duty to not do anything that interferes with the right of PLAINTIFF to receive the fruits of the contract.

51. STATE FARM has put its own interests above those of PLAINTIFF and has, in bad faith, failed or refused to perform their obligations under the POLICY and under the laws of California.

52. STATE FARM has breached the duty of good faith and fair dealing owed to PLAINTIFF as alleged above and including, but not limited to, the following:

a. Unreasonably and in bad faith failing to pay benefits pursuant to said claim without obtaining all relevant information bearing upon

PLAINTIFF'S claim. Among other things, STATE FARM never timely requested an examination under oath of the PLAINTIFF, the plumbing repair professionals, or the remediation and restoration professionals to ascertain the facts that would provide coverage and unreasonably and in bad faith ignored such facts when they were presented in the claim handling process.

b. Unreasonably and in bad faith failing to timely and properly investigate, adjust and pay PLAINTIFF'S claim.

c. Unreasonably and in bad faith challenging the undisputed sudden and catastrophic water intrusion at SUBJECT PROPERTY and resulting water damage as submitted and described by PLAINTIFF during the claim handling;

d. Unreasonably and in bad faith failing to promptly provide a reasonable explanation of the basis relied upon in relation to the applicable facts, for the denial of PLAINTIFF'S claim for benefits, including but not limited to failing to adequately explain when the alleged repeated seepage and/or leakage began, how they determined the rate and flow of the water; what evidence STATE FARM is relying on in concluding that the leak developed over a period of time; what evidence and/or photographs STATE FARM has to support of its conclusion that the damage was evidence of repeated water exposure; and how STATE FARM determined that the water damage was caused by leakage that developed over a period of time, which STATE FARM contends was not covered.

e. Unreasonably and in bad faith failing to make benefit payments to PLAINTIFF at a time when said defendant knew that PLAINTIFF was entitled to the payments under the terms of the POLICY;

f. Unreasonably and in bad faith failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the Insureds;

g. Unreasonably and in bad faith accusing PLAINTIFF of providing inadequate support for the claim and disputing valid proof of loss in an effort by said defendants to wrongfully delay and dispute payment of the claim;

h. Unreasonably and in bad faith imposing requirements upon PLAINTIFF during the claims process not called for in the subject POLICY;

i. Compelling PLAINTIFF to institute litigation to recover insurance policy benefits by wrongfully denying PLAINTIFF'S claims based upon use of improper standards and overly broad interpretations of exclusions and an unduly restrictive interpretation of the mission and intent of the subject POLICY.

j. Unreasonably and in bad faith using unduly restrictive interpretations of the subject POLICY, specifically the interpretation of the Section I-LOSSES INSURED, among others; and intentionally ignoring sections of those exclusions which even if applicable, would have resulted in coverage for the subject loss;

k. Unlawfully denying coverage for an otherwise covered accidental direct physical loss to property claim, in which no exclusions apply.

53. This conduct of STATE FARM directly interfered with the right of PLAINTIFF to receive the fruits of the contract, specifically the insurance for direct physical loss to PLAINTIFF'S property, explicitly and directly recognized and set forth in POLICY. This conduct of STATE FARM further breached the implied-by-law provision to do everything incumbent upon STATE FARM to accomplish the purposes of the contract.

54. In the handling and adjustment of the subject claim, as described above and as will be proven at the time of trial, said Defendant elevated its financial and other interests above those of PLAINTIFF and subordinated Plaintiffs' interests to those of said Defendant, engaging in unprofessional, wrongful and tortious conduct, all to the great financial physical and emotional detriment and harm of PLAINTIFF as specified herein and as will be proven at trial.

55. By obtaining the subject POLICY, PLAINTIFF sought to avoid anxiety and worry over possible losses, specifically including the repair and remediation costs to accidental physical damage caused to his home and the necessary alternative living expenses required to conduct the necessary repairs. Because of the representations made by STATE FARM in undertaking to protect the interests of Plaintiffs, and because of the special relationship between Plaintiffs and STATE FARM created by the subject policy and Defendant's duty of good faith and fair dealing arising thereunder, STATE FARM knew or should have known that PLAINTIFF would suffer worry, anxiety and emotional distress as a likely result of any bad faith or unreasonable conduct by Defendant against PLAINTIFF; any unreasonable failure of Defendant to promptly and thoroughly review and investigate any claims made by Plaintiffs to properly ascertain the cause of a loss and the terms, conditions, and extent of the insurance coverage provided to PLAINTIFF; any unreasonable failure to promptly pay PLAINTIFF'S claims; or any other oppressive conduct in breach of Defendant's duties to PLAINTIFF.

56. As a direct, foreseeable and proximate result of said Defendant's actions as herein alleged, Plaintiffs have suffered damage to their financial status, and reputation, all to their general damage according to proof at trial, which is in an amount in excess of the minimum jurisdiction of the Court. STATE FARM'S

actions as alleged herein were and are intentional, reckless, unprivileged, outrageous and beyond all bounds of decency, performed with the intent to cause extreme emotional distress to PLAINTIFF for the purpose of oppressing and coercing them to withdraw their claim so that they would avoid the humiliation, aggravation, and heartache Defendants know would accompany litigation, and so that PLAINTIFF would bear personal responsibility for the losses.

57. As a direct, foreseeable and proximate result of said Defendants' actions as herein alleged, PLAINTIFF has suffered damage to their social life, extreme anxiety, embarrassment, humiliation, emotional distress and discomfort, all to their general damage according to proof at trial, which is in an amount in excess of the minimum jurisdiction of the Court.

58. The acts of said Defendants herein alleged were intentional, willful and oppressive in that the acts were intended, designed and performed with an ulterior objective of compelling PLAINTIFF to forego meritorious claims, rather than endure Defendants' hostility. The aforementioned conduct was also done with the intent of STATE FARM to force PLAINTIFF to forego their claims and was the corporate practice and procedure of said Defendant, STATE FARM, as perpetuated and directed from its management. STATE FARM'S deceptive and fraudulent conduct in evaluating the claim and intentional, willful, and oppressive delay in properly investigating the claim, coupled with the unreasonable and unfounded decision to deny coverage for PLAINTIFF'S claim, when they knew coverage was available, constitutes despicable, oppressive and fraudulent conduct, for which PLAINTIFF claim punitive damages accordingly to proof at trial.

59. The conduct of said Defendants as alleged herein was unreasonable and in bad faith, for which PLAINTIFF is entitled to an award of attorneys' fees and costs incurred in the prosecution of their action to recover the benefits owed to

them under the POLICY, pursuant to *Brandt vs. Superior Court* (1985) 37 Cal.App.3d 813, according to proof at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**Declaratory Relief**

**(Against All Defendants)**

60. PLAINTIFF incorporates herein by reference all preceding paragraphs of this complaint as though fully set forth herein.

61. A dispute has risen, and an actual controversy exists between PLAINTIFF and ALL DEFENDANTS, and DOES 1 through 100, inclusive in that PLAINTIFF contends that he was entitled to coverage pursuant to the terms, conditions, and covenants of the POLICY without limitation.

62. PLAINTIFF desires a judicial determination of its respective rights and ALL DEFENDANTS' duties in connection with the matters herein alleged, and a judgment in PLAINTIFF'S favor as to any obligations by ALL DEFENDANTS and DOES 1 through 100, inclusive, to PLAINTIFF.

63. WHEREFORE, PLAINTIFF prays judgment against ALL DEFENDANTS and DOES 1 through 100, inclusive, as hereinafter set forth.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, PLAINTIFF ROBERT MALEKYAN demands judgment against DEFENDANT, and each of them, as follows:

1. For all contractual damages as provided under the subject policy in an amount in excess of $500,000.00;

2. For special damages according to proof;

3. For general and compensatory damages, including, but not limited to payment for emotional distress and for all consequential financial losses according to proof;

4. For prejudgment interest at the legal rate, to the extent authorized by law;

5. For costs of suit incurred herein;

6. For declaratory relief;

7. For punitive or exemplary damages to the extent authorized and according to proof;

8. For attorneys' fees pursuant to *Brandt v. Superior Court*;

9. For an order requiring STATE FARM to provide coverage for the Claim under the POLICY effective immediately and so as to cover losses arising from the loss;

10. For all further damages to which Plaintiff is justly entitled and according to proof at trial; and

11. For such other and further relief deemed just and proper.

DATED: March 05, 2025

Respectfully Submitted,

________________________

Christina Azoian, Esq.
George G. Mgdesyan, Esq.
Attorney for Plaintiff,
Robert Malekyan

**<u>DEMAND FOR JURY TRIAL</u>**

PLAINTIFF, by and through his attorney of record, hereby demands jury trial in this action.

DATED: March 05, 2025

Respectfully Submitted,

________________________

Christina Azoian, Esq.
George G. Mgdesyan, Esq.
Attorney for Plaintiff,
Robert Malekyan